# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>TSAWD HOLDINGS, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 16-10527 (MFW)<br>Jointly Administered |
| TSA STORES, INC., TSA PONCE, INC., and TSA CARIBE, INC.,<br><br>Plaintiffs,<br><br>and WILMINGTON SAVINGS FUND SOCIETY, FSB, AS SUCCESSOR ADMINISTRATIVE AND COLLATERAL AGENT,<br><br>Plaintiff-Intervenor/<br>Counterclaim Defendant,<br><br>v.<br><br>PERFORMANCE APPAREL CORP. a/k/a HOT CHILLYS, INC.,<br><br>Defendant/Counterclaim Plaintiff. | Adv. Pro. No. 16-50317-MFW<br><br>**Re: D.I. 91, 92** |

**PERFORMANCE APPAREL CORP.'S ANSWERING BRIEF IN OPPOSITION
TO THE TERM LOAN AGENT'S MOTION FOR SUMMARY JUDGMENT**

Dated: June 15, 2018

**POTTER ANDERSON & CORROON LLP**
Jeremy W. Ryan (DE Bar No. 4057)
John A. Sensing (DE Bar No. 5232)
R. Stephen McNeill (DE Bar No. 5210)
1313 North Market Street, Sixth Floor
Wilmington, DE 19899-0951
Telephone: (302) 984-6000
Facsimile: (302) 658-1192

*Counsel to Performance Apparel Corp.*

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: TSAWD Holdings, Inc. (9008); Slap Shot Holdings, Corp. (8209); TSAWD, Inc. (2802); TSA Stores, Inc. (1120); TSA Gift Card, Inc. (1918); TSA Ponce, Inc. (4817); and TSA Caribe, Inc. (5664). The headquarters for the above-captioned Debtors is located at 1050 West Hampden Avenue, Englewood, Colorado 80110.

The Debtors were formerly known as: Sports Authority Holdings, Inc. (9008); Slap Shot Holdings, Corp. (8209); The Sports Authority, Inc. (2802); TSA Stores, Inc. (1120); TSA Gift Card, Inc. (1918); TSA Ponce, Inc. (4817); and TSA Caribe, Inc. (5664).

**TABLE OF CONTENTS**

                                                                                                    Page

STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS...................1

SUMMARY OF THE ARGUMENTS ..............................................................................1

STATEMENT OF FACTS ...............................................................................................2

ARGUMENT.....................................................................................................................2

    I.      THE TERM LOAN AGENT RAISES ISSUES THAT ARE
           NOT IN DISPUTE AND ARE NOT DETERMINATIVE AS TO
           PRIORITY ................................................................................................2

           A.      The Term Loan Agent Perfected Its Interest in the Debtor's
                    Collateral..................................................................................2

           B.      Once PAC's UCC-1 Financing Statement Lapsed, the
                    Consignment Relationship Was No Longer Governed
                    by the UCC ...............................................................................2

           C.      "General Knowledge" is Not Required to Demonstrate that
                    PAC Has a Superior Interest in the Consigned Goods to the
                    Term Loan Agent......................................................................3

    II.     THE UCC PRIORITY RULES DO NOT APPLY BECAUSE THE
           TERM LOAN LENDERS HAD ACTUAL KNOWLEDGE OF PAC'S
           CONSIGNMENT RELATIONSHIP WITH THE DEBTORS ...................3

           A.      The UCC Does Not Apply To the Consignment Relationship
                    Because the Term Loan Lenders Had Actual Knowledge of the
                    Relationship .............................................................................3

           B.      The Term Loan Lenders Had Actual Knowledge of the
                    Consignment Relationship Through the Term Loan
                    Agreement................................................................................6

CONCLUSION..................................................................................................................8

## TABLE OF AUTHORITIES

**CASES**

**Page(s)**

*Ambrico v. Lynbrook Union Free Sch. Dist.*,
　71 A.D.3d 762 (N.Y. App. Div. 2010) ................................................................................7

*Eurpac Serv. Inc. v. Republic Acceptance Corp.*,
　37 P.3d 447 (Colo. App. 2000) ..........................................................................................4

*First Nat'l Bank of Blooming Prairie v. Olsen*,
　403 N.W.2d 661 (Minn. Ct. App. 1987) ............................................................................4

*GBS Meat Indus. Pty. Ltd. v. Kress-Dobkin Co.*,
　474 F. Supp. 1357 (W.D. Pa. 1979), aff'd sub nom. A. J. Armstrong
　Co., Inc., Appeal of, 622 F.2d 578 (3d Cir. 1980) .............................................................4

*In re SemCrude, L.P*,
　504 B.R. 39 ........................................................................................................................5

*In re Valley Media, Inc.*,
　279 B.R. 105 ......................................................................................................................3

Performance Apparel Corp. ("PAC") hereby respectfully submits its answering brief (the "PAC Brief")[2] in response to the motion for summary judgment [D.I. 91] (the "WSFS Motion") and related brief [D.I. 92] (the "WSFS Opening Brief") that were filed by Wilmington Savings Fund Society, FSB, ("WSFS") in its capacity as successor Administrative Agent and Collateral Agent (the "Term Loan Agent") on May 18, 2018.

## STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS

The Statement of the Nature and Stage of the Proceedings is set forth in the PAC Brief and is incorporated herein by reference.

## SUMMARY OF THE ARGUMENTS

1. Several of the issues raised by the Term Loan Agent in the WSFS Opening Brief are not in dispute and are not determinative as to the priority of distribution of the Proceeds from the Consigned Goods. As set forth herein, PAC does not disagree that WSFS perfected its security interest in the Debtor's collateral pursuant to the standards set forth in the UCC. PAC also does not contest that the UCC-1 financing statement that it filed in 2009 lapsed in August of 2014 and PAC did not file a renewal statement. Finally, PAC does not dispute that the "general knowledge" defense, as that term was articulated in Valley Media, is inapplicable to this dispute.

2. The Term Loan Agent's focus on these issues detracts from the real issue in this case, which is whether the Term Loan Lenders had actual knowledge of PAC's consignment relationship with the Debtors. Because the Term Loan Lenders had actual

---

[2] PAC filed *Performance Apparel Corp.'s Motion for Summary Judgment* [D.I. 96] seeking denial of the claims brought against it by WSFS and the above captioned debtors (the "Debtors") on May 18, 2018, and filed *Performance Apparel Corp.'s Opening Brief in Support of its Motion for Summary Judgment* [D.I. 97] (the "PAC Opening Brief") contemporaneously therewith. Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the PAC Opening Brief.

knowledge of the consignment relationship, the UCC does not apply, and PAC has priority in the Consigned Goods and their Proceeds.

## STATEMENT OF FACTS

The facts relevant to the remaining issues are set forth in the Statement of Facts contained in the PAC Opening Brief, which is incorporated herein by reference.

## ARGUMENT

### I. THE TERM LOAN AGENT RAISES ISSUES THAT ARE NOT IN DISPUTE AND ARE NOT DETERMINATIVE AS TO PRIORITY.

#### A. The Term Loan Agent Perfected Its Interest in the Debtor's Collateral.

Across more than four pages, the Term Loan Agent belabors the notion that it perfected its liens pursuant to the standards set forth in the UCC. See WSFS Opening Br. ¶¶27-38. The focus of their argument is in essence that because the Term Loan Agent filed a UCC-1, it has priority over PAC in the Consigned Goods that PAC supplied to the Debtors. However, the Term Loan Agent acknowledges in its own brief that there are exceptions to the UCC rules regarding priority. See Opening WSFS Br. at ¶44.

The Term Loan Agent's focus on its own perfection of its security interest is misguided because PAC does not dispute this fact. Rather, for the reasons set forth below, notwithstanding the Term Loan Agent's perfection of its interest pursuant to the UCC, it does not have priority over PAC in the Consigned Goods.

#### B. Once PAC's UCC-1 Financing Statement Lapsed, the Consignment Relationship Was No Longer Governed by the UCC.

The Term Loan Agent similarly devotes a substantial portion of its argument toward addressing the fact that the UCC-1 financing statement that PAC filed in 2009, lapsed in August of 2014. Id. at ¶¶ 39-43. Again, this fact is not in dispute. PAC has not claimed that it filed a filed a renewal statement. Rather, as set forth more fully below and

in the PAC Opening Brief, despite the fact that PAC did not file a renewal statement, the Term Loan Lenders had knowledge of PAC's consignment relationship with the Debtors (the "Consignment Relationship"). Given that the purpose of filing a UCC-1 is to put a debtor's creditors on notice of interests that may have priority over their own, actual knowledge of such interest satisfies that purpose. Accordingly, the Term Loan Lenders' knowledge of the Consignment Relationship excepted PAC from the UCC filling requirements.

### C. "General Knowledge" is Not Required to Demonstrate that PAC Has a Superior Interest in the Consigned Goods to the Term Loan Agent.

"General Knowledge," is used as a term of art when referring to consignment relationships. Judge Walsh explained in In re Valley Media, Inc., that a consignor can avoid the application of the UCC if it can demonstrate "(1) that the consignee is substantially engaged in selling the goods of others, and (2) that it is generally known by creditors of the consignee that this is the case." 279 B.R. 105, 124 (Bankr. D. Del. 2002). The Term Loan Agent argues that here there can be no general knowledge, as that term is defined in Valley Media, because the debtors sold less than 20% of their goods on consignment. The Term Loan Agent's focus on the general knowledge test is misplaced because courts have substituted actual knowledge for general knowledge, and here the Term Loan Lenders had actual knowledge of the Consignment Relationship.

## II. THE UCC PRIORITY RULES DO NOT APPLY BECAUSE THE TERM LOAN LENDERS HAD ACTUAL KNOWLEDGE OF PAC'S CONSIGNMENT RELATIONSHIP WITH THE DEBTORS.

### A. The UCC Does Not Apply To the Consignment Relationship Because the Term Loan Lenders Had Actual Knowledge of the Relationship.

As the Term Loan Agent admits, and as the Third Circuit has affirmed, a consignor may have a priority interest superior to that of a secured creditor that perfected its lien

3

pursuant to the terms proscribed by the UCC, even when the consignor did not perfect its interest in the consigned goods pursuant to the UCC, when the secured creditor had "actual knowledge of the consignment." GBS Meat Indus. Pty. Ltd. v. Kress-Dobkin Co., 474 F. Supp. 1357, 1363 (W.D. Pa. 1979), aff'd sub nom. A. J. Armstrong Co., Inc., Appeal of, 622 F.2d 578 (3d Cir. 1980); WSFS Opening Br. at ¶51. Furthermore, and as further acknowledged by the Term Loan Agent, the rationale for allowing the actual knowledge exception stems from the notion that it would be "absurd" to allow a creditor to be imputed with general knowledge that would defeat the notification requirements of the UCC, but "not to hold the same creditor responsible for actual knowledge." See Eurpac Serv. Inc. v. Republic Acceptance Corp., 37 P.3d 447, 451 (Colo. App. 2000); WSFS Opening Br. at ¶51. Therefore, when a creditor has actual knowledge of a consignment relationship, the UCC will not apply.

The Term Loan Agent attempts to distinguish GBS Meat Industry by claiming that the financing company in question there had a more robust knowledge of the consignee's consignment relationship than that of the Term Loan Lenders in this instance due to the finance company's "pervasive control of [the consignee's] operations." WSFS Opening Br. at ¶ 54 (quoting GBS Meat Indus., 474 F. Supp. at 1359-60). The GBS Meat Industry court, however, did not employ as strict a standard as the Term Loan Agent suggests. Rather, it acknowledged that the evidence that the finance company had knowledge of the consignments, which the court found amounted to actual knowledge, was actually circumstantial. GBS Meat Indus., 474 F. Supp. at 1359; see also First Nat'l Bank of Blooming Prairie v. Olsen, 403 N.W.2d 661, 663, 665 (Minn. Ct. App. 1987) (making several inferences when examining whether the evidence supported "the trial court's

4

finding that the bank knew *or should have known* that Olsen custom-fed substantial numbers of cattle." (emphasis added)).

The Term Loan Agent seeks to further obfuscate the issue by arguing that the Term Loan Lenders could not have had actual knowledge of the Consignment Relationship because the Debtors had represented that consignment goods would only represent an "immaterial" portion of their inventory. WSFS Opening Br. at ¶52. Despite its inability to articulate what portion of inventory would need to be held on consignment to be considered material,[3,4] the Term Loan Agent supports this superfluous argument by citing In re SemCrude, L.P, 504 B.R. 39, wherein the court found that downstream purchasers of oil and gas did not have knowledge that the sale of such oil and gas violated certain producers' lien rights. WSFS Opening Br. at ¶52

The Term Loan Agent's reliance on SemCrude is misguided. For one, there is a fundamental difference between a purchaser from a debtor and a lender thereto. A lender will be much more intimately familiar with the intricacies of a business to which it provides financing than a purchaser is likely to be with a supplier. Further, the question in SemCrude regarded an express warranty from a seller that the goods were being sold free and clear of all liens. Id. at 59. Here the opposite is true—where the Term Loan Agent and Term Loan Lenders were expressly informed that certain of the Debtors' goods were being sold on consignment. See Opening McNeill Declaration, Ex. D, Term Loan Agreement Schedule

---

[3] Ex. A, WSFS 30(b)(6) Deposition Tr. at 81:4-22.

[4] All references to "Ex. __" are references to the exhibits attached to the Declaration of R. Stephen McNeill in Support of Performance Apparel Corp.'s Answering Brief in Opposition to the Term Loan Agent's Motion for Summary Judgment, which was filed contemporaneously herewith.

7.01(b).[5]  Indeed, the Consignment Relationship itself was listed on the Schedules to the Term Loan Agreement.  Thus, even if the Term Loan Agent's interpretation of SemCrude is accurate—and it is not—any "warranty" from the Debtors regarding the lack of consigned goods simply does not apply to the Consignment Relationship.

### B. The Term Loan Lenders Had Actual Knowledge of the Consignment Relationship Through the Term Loan Agreement.

The Term Loan Lenders had actual knowledge of PAC's Consignment Relationship with the Debtors.  As more fully set forth in the PAC Opening Brief, which is incorporated herein by reference, PAC was one of the original consignment vendors who sold goods on consignment to the Debtors.  PAC filed a UCC-1 financing statement evidencing its security interest in the Consigned Goods on August 28, 2009 and sent a letter disclosing its consignment interests to all listed secured parties, including BOA in its capacities as collateral agent under both the ABL Loan and the Term Loan on August 26, 2009.  Opening McNeill Declaration, Ex. H, Perfection Letters.  The Term Loan Agent has not argued that BOA did not receive notice of the Consignment Relationship, nor can it as evidenced by the delivery receipt identified in the lower right corner of the Perfection Letters received by BOA. Id. at PA00000115, PA00000116.

The Term Loan Agent acknowledges, as it must, that BOA had notice of the Consignment Relationship. WSFS Opening Br. at ¶56.  However, the Term Loan Agent contends, without providing any support, that the notice that BOA obtained of the Consignment Relationship does not equate to actual knowledge.  Id.  While technically

---

[5]   References to the Opening McNeill Declaration are references to the *Declaration of R. Stephen McNeill in Support of Performance Apparel Corp.'s Opening Brief in Support of Its Motion for Summary Judgment* [D.I. 98].

6

notice is a broader term than knowledge, a party may obtain knowledge by receiving notice. See Ambrico v. Lynbrook Union Free Sch. Dist., 71 A.D.3d 762, 763 (N.Y. App. Div. 2010) (finding notice of a claim sufficient to provide "actual knowledge of the essential facts constituting that claim"). The Term Loan Agent does not, and cannot contend that BOA did not receive or review the notice of the Consignment Relationship and therefore, such notice provided actual knowledge of the Consignment Relationship.

Furthermore, BOA had actual knowledge of the Consignment Relationship by way of the Term Loan Agreement. The Term Loan Agreement specifically lists PAC as a consignment vendor with a senior security interest in the Consigned Goods. See Opening McNeill Declaration, Ex. D, Term Loan Agreement Schedule 7.01(b). BOA negotiated and entered into the Term Loan Agreement, and therefore would have been familiar with and had actual knowledge of its terms. Accordingly, BOA had actual knowledge of the Consignment Relationship. See Ex. A, WSFS 30(b)(6) Deposition Tr. at 98:18-24 ("Q. So is it fair to say then that as of the time the credit agreement was entered, Bank of America and all the other parties to the credit agreement were on notice that Performance Apparel Corporation was a secured party with regard to its consigned inventory? A. Yes.").

Similarly, the Term Loan Lenders, from a cursory review of the Term Loan Agreement, would have knowledge of the terms of the agreement, including knowledge relating to PAC's security interest in the Consigned Goods. The Term Loan Agent has not contended that any of the Term Loan Lenders did not review the Term Loan Agreement, nor that they did not have knowledge of its terms. Indeed, it is implausible that any lender would lend a substantial amount of money to a borrower without a full understanding of the terms on which it is lending.

**CONCLUSION**

For the foregoing reasons, PAC respectfully requests that the court deny the WSFS Motion and grant PAC any further relief to which it is otherwise entitled.

Respectfully submitted,

Dated: June 15, 2018
      Wilmington, Delaware

**POTTER ANDERSON & CORROON LLP**

*/s/ John A. Sensing*
Jeremy W. Ryan (DE Bar No. 4057)
John A. Sensing (DE Bar No. 5232)
R. Stephen McNeill (DE Bar No. 5210)
1313 North Market Street, Sixth Floor
P.O. Box 951
Wilmington, DE  19899-0951
Telephone:  (302) 984-6000
Facsimile:  (302) 658-1192
Email:  jryan@potteranderson.com
       jsensing@potteranderson.com
       rmcneill@potteranderson.com

*Counsel to Performance Apparel Corp.*