# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TSAWD HOLDINGS, INC., *et al.*,[1] | Case No. 16-10527 (MFW) |
| Debtors. | (Jointly Administered) |
| TSA STORES, INC., TSA PONCE, INC., and TSA CARIBE, INC., | |
| Plaintiffs, | |
| and WILMINGTON SAVINGS FUND SOCIETY, FSB, AS SUCCESSOR ADMINISTRATIVE AND COLLATERAL AGENT, | Adv. Pro. No. 16-50317-MFW |
| Plaintiff-Intervenor/ Counterclaim Defendant, | Re: D.I. 91 |
| v. | |
| PERFORMANCE APPAREL CORP. a/k/a HOT CHILLYS, INC., | |
| Defendant/Counterclaim Plaintiff. | |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
TERM LOAN AGENT'S MOTION FOR SUMMARY JUDGMENT**

| | |
|---|---|
| MORRIS, NICHOLS, ARSHT & TUNNELL LLP | BROWN RUDNICK LLP |
| Robert J. Dehney (No. 3578) | Robert J. Stark (admitted *pro hac vice*) |
| Gregory W. Werkheiser (No. 3553) | William R. Baldiga (admitted *pro hac vice*) |
| Daniel B. Butz (No. 4227) | May Orenstein (*admitted pro hac vice* ) |
| 1201 N. Market St., 16th Floor | Bennett S. Silverberg (admitted *pro hac vice*) |
| P.O. Box 1347 | Seven Times Square |
| Wilmington, DE 19899-1347 | New York, NY 10036 |
| Tel: 302-658-9200 | Tel: (212) 209-4800 |

*Counsel to Wilmington Savings
Fund Society, FSB, as Term Loan Agent*

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: TSAWD Holdings, Inc. (9008); Slap Shot Holdings, Corp. (8209); TSAWD, Inc. (2802); TSA Stores, Inc. (1120); TSA Gift Card, Inc. (1918); TSA Ponce, Inc. (4817); and TSA Caribe, Inc. (5664). The headquarters for the above-captioned Debtors is located at 1050 West Hampden Avenue, Englewood, Colorado 80110.

The Debtors were formerly known as: Sports Authority Holdings, Inc. (9008); Slap Shot Holdings, Corp. (8209); The Sports Authority, Inc. (2802); TSA Stores, Inc. (1120); TSA Gift Card, Inc. (1918); TSA Ponce, Inc. (4817); and TSA Caribe, Inc. (5664).

## TABLE OF CONTENTS

                                                           **Page**

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT ..................................................................................................................................2

    I.      PAC Fails To Provide Evidentiary Support For Its Actual Knowledge Defense. ................4

CONCLUSION .............................................................................................................................11

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

Ambrico v. Lynbrook Union Free Sch. Dist.,
   71 A.D.3d 762 (N.Y. App. Div. 2010) ...................................................................................8

Berk v. State Bank of India,
   No. 96 CIV. 4972 (MBM), 1998 WL 567853 (S.D.N.Y. Aug. 28, 1998).................................5

Eurpac Serv. Inc. v. Republic Acceptance Corp.,
   37 P.3d 447 (Colo. App. 2000)................................................................................................4

Fariba v. Dealer Servs. Corp.,
   178 Cal. App. 4th 156 (Cal. Ct. App. 2009) ............................................................................7

First Nat'l Bank of Blooming Prairie v. Olsen,
   403 N.W.2d 661 (Minn. Ct. App. 1987)..........................................................................5, 6, 7

Galli v. N.U. Meadowlands Commc'n,
   490 F.3d 265 (3d Cir. 2007).....................................................................................................3

GBS Meat Indus. Pty. Ltd. v. Kress-Dobkin Co.,
   474 F. Supp. 1357 (W.D. Pa. 1979), aff'd sub nom. A. J. Armstrong Co., Inc.,
   Appeal of, 622 F.2d 578 (3d Cir. 1980)...............................................................................5, 7

In re Ellingson Motors, Inc.,
   139 B.R. 919 (Bankr. D. Neb. 1991) .....................................................................................10

In re SemCrude L.P.,
   864 F.3d 280 (3d Cir. 2017).............................................................................................8, 10

Official Unsecured Creditors' Comm. of Broadstripe, LLC v. Highland Capital
   Mgmt., L.P. (In re Broadstripe, LLC),
   444 B.R. 51 (Bankr. D. Del. 2010) .....................................................................................3, 6

**STATUTES**

N.Y. Gen. Mun. Law § 50-e ..........................................................................................................8

UCC § 1-202 ...............................................................................................................................7, 8

UCC § 9-102 ....................................................................................................................................9

UCC § 9-324 ....................................................................................................................................9

UCC § 9-515 ....................................................................................................................................9

**OTHER AUTHORITIES**

Fed. R. Bankr. P. 7012 ................................................................................................................1

Fed. R. Civ. P. 12(c) ..................................................................................................................1

Wilmington Savings Fund Society, FSB, as successor administrative and collateral agent (the "Term Loan Agent") respectfully submits this reply memorandum of law in further support of its motion against Defendant/Counterclaim-Plaintiff Performance Apparel Corp. a/k/a Hot Chillys, Inc. ("PAC") for summary judgment pursuant to Federal Rule of Bankruptcy Procedure 7056 and Federal Rule of Civil Procedure 56 (the "Motion").[2]

## PRELIMINARY STATEMENT

1.  Incredibly, PAC's claim of actual knowledge on the part of the *Term Loan Lenders* relies on nothing more than its bald assertion that such knowledge must be presumed based on a *lapsed notice* of PAC's consignment arrangement provided to Bank of America in 2009 (the "Lapsed Notice") and the listing of PAC's 2009 UCC-1 financing statements (the "Lapsed UCC Filings") in a schedule of existing liens attached to the 2010 Term Loan Credit Agreement (the "2009 Lien Schedule").  PAC provides literally no evidence that any Term Loan Lender ever saw the Lapsed Notice or reviewed the 2009 Lien Schedule.  PAC simply equates stale notice with actual knowledge and claims that such putative (but entirely unproven) knowledge "excepted PAC from the UCC filing requirements."[3]

2.  Instead of presenting anything resembling evidence of knowledge, PAC baldly claims that "the Term Loan Lenders, from a cursory review of the Term Loan [Credit] Agreement, *would have* knowledge of the terms of the agreement, including knowledge relating to PAC's security interest in the Consigned Goods."  PAC Opp. 7 (emphasis added).  Turning the burden on this Motion upside down, PAC then argues that the "Term Loan Agent has not contended that any of the Term Loan Lenders did not review the Term Loan [Credit] Agreement

---

[2] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to such terms in the *Memorandum of Law in Support of Term Loan Agent's Motion for Summary Judgment*, dated May 18, 2018 [D.I. 92] (the "TLA Br.").

[3] See *Performance Apparel Corp.'s Answering Brief In Opposition To The Term Loan Agent's Motion For Summary Judgment*, dated June 15, 2018 [D.I. 104] (the "PAC Opp."), 3, 6-7.

. . . ." <u>Id.</u>  Finally, PAC announces that it is "implausible that any lender would lend a substantial amount of money to a borrower without a full understanding of the terms on which it is lending." <u>Id.</u>

3.   Discovery is completed.  The time for assumptions, conjecture and assertions of what is or is not plausible is over.  It is PAC's burden to establish an issue of fact with regard to the knowledge of Term Loan Lenders.  Since PAC has offered no evidence that even a single Term Loan Lender ever saw the Lapsed Notice or reviewed the 2009 Lien Schedule, PAC's reliance on these materials fails.  Fatal to PAC's contentions, the UCC clearly distinguishes between notice and actual knowledge.

4.   Moreover, even if, *arguendo*, a current filing was some evidence of actual knowledge, PAC cannot survive summary judgment in reliance on a lapsed filing.  A creditor with knowledge of a *current* filing is on notice of a possible lien.  A creditor with knowledge of a lapsed filing is on notice only that in the past, another creditor may have had a competing lien.  A creditor that sees a filing has lapsed and has not been continued is entitled to infer that the past filer no longer claims priority.  To give a lapsed notice the effect of a current one would materially undermine the workings of the UCC filing and notice systems upon which creditors rely in extending credit.

5.   In PAC's motion for summary judgment, PAC contended that the knowledge of Bank of America is imputed to the Term Loan Lenders.  No such contention is made in opposition to this Motion – for good reason.  As demonstrated by the Term Loan Agent, the terms of the Term Loan Credit Agreement absolutely preclude reliance on imputation as a means to establish the knowledge of the Term Loan Lenders based on what the Term Loan Agent knew.

To oppose this Motion, PAC was required to provide evidence in admissible form of what the Term Loan Lenders knew. It failed to do so.

6. Accordingly, summary judgment should be granted in the Term Loan Agent's favor.

## ARGUMENT

7. In its Opening Brief, the Term Loan Agent established, by evidence in admissible form, that it has a perfected security interest that attaches to the proceeds at issue under the Final Order. See TLA Br. § II.A-B. The Term Loan Agent further demonstrated that its perfected interest is senior to PAC's unperfected interest under the UCC. See id.[4] Finally, the Term Loan Agent demonstrated that the amount of proceeds at issue is $243,485.37. See id. ¶ 20. PAC concedes all of these points. See PAC Opp. 1-2.

8. Because the Term Loan Agent established, *prima facie*, its priority lien on the Prepetition Consigned Goods, it was incumbent upon PAC to oppose the Term Loan Agent's Motion by laying bare its proof of the existence of a defense to the Term Loan Agent's priority claim and its rights under the Final Order to turnover of the proceeds from the sale of PAC's Prepetition Consigned Goods.

9. To avoid summary judgment, PAC was required to show "specific facts such that a reasonable jury could find in that party's favor, thereby establishing a genuine issue of fact for trial." Galli v. N.U. Meadowlands Commc'n, 490 F.3d 265, 270 (3d Cir. 2007); see also TLA Br. ¶ 36; Official Unsecured Creditors' Comm. of Broadstripe, LLC v. Highland Capital Mgmt., L.P. (In re Broadstripe, LLC), 444 B.R. 51, 77 (Bankr. D. Del. 2010) ("[T]he nonmovant must

---

[4] PAC does not dispute that it allowed its 2009 UCC-1 financing statement to lapse in 2014 and, thus, its interest in the Prepetition Consigned Goods was unperfected. See PAC Opp. 1.

3

supply sufficient evidence (not mere allegations) for a reasonable jury to find for the nonmovant.").

10.     PAC has utterly failed to meet this burden. Its perfunctory opposition papers are unsupported by any evidence of the actual knowledge of a single Term Loan Lender.

I.     **PAC Fails To Provide Evidentiary Support For Its Actual Knowledge Defense.**

11.     PAC contends that Bank of America, the predecessor Term Loan Agent, acquired actual knowledge when it received the Lapsed Notice in 2009 disclosing PAC's consignment interest. See PAC Opp. 6. PAC also contends that Bank of America and the Term Loan Lenders acquired actual knowledge from the 2009 Lien Schedule listing "[l]iens existing on the date hereof" – a schedule that lists the Lapsed UCC Filings by PAC. See id. at 7; PAC Ex. D at TLA00001170-1178.[5]

12.     Because there is no evidence that either the Term Loan Agent or the Term Loan Lenders saw the Lapsed Notice or the 2009 Lien Schedule, these materials cannot create a genuine issue of fact as to the actual knowledge a party might obtain if it did review these materials. PAC's contention that it need only show "circumstantial" evidence of knowledge misses the point. See PAC Opp. 4-5. While knowledge is susceptible to proof through circumstantial evidence, to be sufficient to create an issue of fact as to the Term Loan Agent's knowledge, circumstantial evidence must be sufficient to support an interference that the Term Loan Agent actually knew PAC was selling goods on consignment to the Debtors. See, e.g., TLA Br. § II.C.2; Eurpac Serv. Inc. v. Republic Acceptance Corp., 37 P.3d 447, 449 (Colo. App. 2000) (finding actual knowledge where lender specifically refused to lend money against identified portion of consigned goods and required the debtor to maintain separate inventory

---

[5]    Citations to "PAC Ex." refer to exhibits attached to the *Declaration of R. Stephen McNeill in Support of Performance Apparel Corp.'s Opening Brief in Support of its Motion for Summary Judgment*, dated May 18, 2018 [D.I. 97].

4

records of the consigned goods); <u>Berk v. State Bank of India</u>, No. 96 CIV. 4972 (MBM), 1998 WL 567853 (S.D.N.Y. Aug. 28, 1998) (rejecting actual knowledge argument, noting that "this is not a case, such as <u>GBS Meat Industry</u>, where the creditor knowingly financed or took an active role in a consignment enterprise"). Here, the evidence offered, considered in comparison to other cases where knowledge was found, is clearly is not sufficient.

13. Cases relied upon by PAC throw into relief the insufficiency of PAC's knowledge "evidence," which is no evidence at all. In <u>GBS Meat Indus. Pty. Ltd. v. Kress-Dobkin Co.</u>, actual knowledge was found where the lender: (i) performed periodic full scale audits of the consignee's books and records, which often consumed several days and included examinations of accounts payable (which included monies owed to the consignor); (ii) contacted the consignee almost daily regarding its operations; (iii) on a daily basis, received schedules of assignments of the consignee's accounts receivables; (iv) paid the custom charges on the consigned goods; and (vi) previously paid the consignor for the consigned goods on the consignees behalf. See <u>GBS Meat Indus. Pty. Ltd. v. Kress-Dobkin Co.</u>, 474 F. Supp. 1357, 1359 (W.D. Pa. 1979), <u>aff'd sub nom.</u> <u>A. J. Armstrong Co., Inc., Appeal of</u>, 622 F.2d 578 (3d Cir. 1980).

14. PAC's reliance on <u>First Nat'l Bank of Blooming Prairie v. Olsen</u> is likewise unavailing. In that case, the court found that a bank had actual knowledge that cattle possessed by the debtor were not the property of the debtor where the creditor had been told by a customer of the debtor that the customer was the owner. See <u>First Nat'l Bank of Blooming Prairie v. Olsen</u>, 403 N.W.2d 661, 665 (Minn. Ct. App. 1987).

15. In contrast to these cases, there is no evidence of actual knowledge here. PAC has offered no evidence that even a single Term Loan Lender ever saw the Lapsed Notice or reviewed the 2009 Lien Schedule. Instead, PAC's argument is predicated on nothing more than

the notion that it is "implausible" that the Term Loan Lenders did not review the 2009 Lien Schedule. See PAC Opp. 7. PAC's bald and uninformed notions of creditor behavior are not evidence and must be disregarded on the Motion. See In re Broadstripe, LLC, 444 B.R. at 77 (explaining that to oppose summary judgment, a non-movant "must present definite, competent evidence" that is not "conjectural or problematic").

16. PAC's attempt to overcome its failure to present evidence of the Term Loan Lenders' knowledge by contending that Bank of America as predecessor Term Loan Agent purportedly obtained actual knowledge fails. First of all, PAC has not offered evidence of Bank of America's actual knowledge. Even if PAC had evidence of Bank of America's actual knowledge of PAC consignments, PAC has not and cannot provide a rationale for imputing the alleged knowledge of Bank of America to the Term Loan Lenders.[6]

17. Rather than provide evidence of actual knowledge, PAC points to the Minnesota Court of Appeals' *dicta* in First Nat'l Bank of Blooming Prairie to suggest that constructive knowledge or inquiry notice is sufficient to apply an exemption from the UCC rule. See PAC Opp. 4-5 (citing First Nat'l Bank of Blooming Prairie, 403 N.W. 2d at 663, 665). As already demonstrated however, the overwhelming weight of authority is that precluding a creditor from obtaining priority under the rules of Article 9 of the UCC requires proof of actual knowledge. See TLA Br. § II.C.2; TLA Opp. § II. Even First Nat'l Bank of Blooming Prairie does not support PAC. In that case, the appellate court upheld the ruling below, not because of what the bank in that case *should* have known, but because "the record support[ed] the trial court's finding

---

[6] PAC does not contend in its Opposition that the knowledge of the Term Loan Agent is imputed. In any event, any imputation argument has no merit as demonstrated in the Term Loan Agent's opposition to PAC's motion for summary judgment, which is incorporated herein by reference. See *Memorandum of Law of Term Loan Agent in Opposition to Performance Apparel Corp.'s Motion for Summary Judgment*, dated June 15, 2018 [D.I. 103] (the "TLA Opp."), § III.

6

that the bank had *actual knowledge* . . . ." First Nat'l Bank of Blooming Prairie, 403 N.W.2d at 665 (emphasis added).

18. It is well established that constructive knowledge or inquiry notice is not sufficient to take a consignment transaction outside of the UCC. In GBS Meat Indus., on which PAC relies, the court rejected a constructive knowledge standard, and for good reason. See GBS Meat Indus., 474 F. Supp. at 1360 (noting with approval that the trial court had rejected plaintiffs' proposed instruction that the jury could find liability if the financing company "should have known" of the consignment and instead charged the jury that it could hold the financing company liable "only if [the financing company] had actual knowledge that the goods were consigned").

19. As PAC recognizes, the actual knowledge exception stems from the view that it would be absurd to hold a creditor responsible based on the fiction of imputing to the creditor what is generally known by a debtor's creditors, but not to hold the same creditor responsible for its actual knowledge. See PAC Opp. 4; Fariba v. Dealer Servs. Corp., 178 Cal. App. 4th 156, 169 (Cal. Ct. App. 2009) (explaining that it would be absurd for the knowledge exception to include "constructive knowledge" under the "generally known / substantially engaged" test, but not to include actual knowledge). While this observation provides some rationale for carving out an extra-statutory exemption from the UCC for creditors with actual knowledge, this rationale does not extend to imposing a duty on creditors to investigate lapsed UCC notices filed by consignors in order to discover whether those consignors have continued their consignment relationships.

20. The UCC makes plain that constructive knowledge is not actual knowledge. See UCC § 1-202(d) (providing that a person gives "notice" by "taking such steps as may be

7

reasonably required to inform the other person in ordinary course, *whether or not the other person actually comes to know of it*") (emphasis added); UCC § 1-202(a) (distinguishing between "actual knowledge" and knowledge "[f]rom all the facts and circumstances known to the person at the time in question, has reason to know").

21. For example, in <u>SemCrude</u>, the Third Circuit refused to find that oil purchasers had actual knowledge of certain oil producer's unperfected liens, stating that "[d]espite volumes of discovery, at most the Producers have produced indications of constructive knowledge (a reason to know), but U.C.C. § 1-202(b) requires 'actual knowledge.'" <u>In re SemCrude L.P.</u>, 864 F.3d 280, 295 (3d Cir. 2017). Here, too, PAC has engaged in extensive discovery and has produced <u>at most</u> weak indications that Bank of America and the Term Loan Lenders may have had a reason to know about PAC's past consignment activity. This is insufficient to create a genuine issue of fact.

22. PAC fails to cite a single case (and the Term Loan Agent is aware of none) where the giving of notice demonstrates the "actual knowledge" of the notice-receiving party for purposes of establishing priority. Citing to <u>Ambrico v. Lynbrook Union Free Sch. Dist.</u>, PAC claims that "a party *may obtain* knowledge by receiving notice." PAC Opp. 6-7 (emphasis added). As an indication of the absolute absence of any authority supporting PAC's novel extension of the "actual knowledge" exception, <u>Ambrico</u> involved the efficacy of a notice of a tort claim served against a public corporation under New York General Municipal Law. <u>See Ambrico v. Lynbrook Union Free Sch. Dist.</u>, 71 A.D.3d 762, 763 (N.Y. App. Div. 2010) (upholding grant of leave to file late notice of claim where the municipality had timely acquired knowledge of the essential facts); <u>see also</u> N.Y. Gen. Mun. Law § 50-e.

23. Moreover, PAC ignores that in addition to failing to provide competent evidence of actual knowledge, it has failed to provide evidence of facts that would put a Term Loan Lender on notice of PAC's consignments. For this reason, the holding of SemCrude – that where actual knowledge is a standard under the UCC, a movant may not meet its burden through facts arguably indicative of constructive knowledge – applies even more forcefully here. PAC's "actual knowledge" argument requires this Court to accept a *lapsed* notice as a substitute for the statutory "generally known / substantially engaged" exception found in UCC § 9-102(a)(20). In PAC's view, its compliance *in 2009* with UCC § 9-324 requirements for obtaining priority over the Term Loan Lenders is sufficient to establish *prima facie* that even after that 2009 notice has lapsed, the Term Loan Lenders had actual knowledge of PAC's consignment arrangements with the Debtors. As evidence for this, PAC points to the affirmative answer given by WSFS acknowledging that "*as of the time the credit agreement was entered* [*i.e.*, 2010] Bank of America and all the other parties to the credit agreement were *on notice* that Performance Apparel was a secured party . . . ." PAC Opp. 7.

24. Contrary to PAC's fanciful view, an expired notice does not supply actual knowledge of the existence of a consignment arrangement. UCC § 9-324(b) requires a consignment vendor to be perfected before supplying goods to a debtor and to send holders of conflicting security interests notification of the consignor's interest "within five years before the debtor receives possession of that inventory" in order to obtain priority. UCC § 9-324(b). UCC § 9-515 requires a creditor to file a continuation statement every five years to maintain perfection. See UCC § 9-515. In 2014, PAC allowed its UCC-1 financing statement to lapse and failed to provide a new notification of its consignment interest. As a result, PAC's 2009 notice to Bank of America was no longer operative as of 2014.

9

25. A lapsed UCC filing is insufficient as a matter of law to provide legally effective notice of a competing lien. Cf. In re Ellingson Motors, Inc., 139 B.R. 919, 923-24 (Bankr. D. Neb. 1991) (holding that security interest was unperfected where secured creditor failed to properly file a continuation statement regardless of whether or not creditor with competing security interest had actual knowledge of the terms of the original financing statement).

26. A creditor with knowledge of a lapsed filing is on notice only that in the past, another creditor may have had a competing lien. Certainly, a creditor with knowledge of a *lapsed* UCC statement is entitled to disregard that UCC statement and assume that the past filer no longer claims priority. If a lapsed notice is insufficient to put a party on inquiry notice of a lien then *a fortiori* a lapsed notice is insufficient to impart actual knowledge of a lien.

27. SemCrude provides an additional basis for rejecting PAC's assertions of actual knowledge. In that case, the court found that where a seller expressly warranted to the purchasers that there were no liens on the oil, those purchasers could not be found to have actual knowledge of the producers' liens. See In re SemCrude L.P., 864 F.3d at 295. Similarly, here TSA covenanted to the Term Loan Agent that it would not, in the future, have "any property on consignment" other than an "immaterial" portion of inventory. See TLA Ex. B § 3.06, Schedule 3.06.

28. PAC's attempt to distinguish SemCrude misses the mark. PAC first claims that the relationship between a supplier and a purchaser is "fundamentally differen[t]" from the relationship between a lender and a debtor because "[a] lender will be much more intimately familiar with the intricacies of a business to which it provides financing than a purchaser is likely to be with a supplier." PAC Opp. 5. PAC, ignoring that the Term Loan was widely syndicated and the implications of a syndicated loan structure on the relationship of individual lenders and

the borrower, is unable to identify any evidence that the Term Loan Lenders were "intimately familiar with the intricacies" of the Debtors' business. None. In any event, PAC does not explain why familiarity with a business has any relevance as a matter of law for an entity's entitlement to rely on a contractual covenant.

29.     PAC also claims that SemCrude concerned an express warranty that goods were being sold free and clear of liens, whereas the 2009 Lien Schedule "informed" the Term Loan Agent and Term Loan Lenders "that certain of the Debtors' goods were being sold on consignment." See PAC Opp. 5. That a handful of secured parties who, as of 2010, held an interest in certain goods consigned to the Debtors were identified on a schedule in no way diminishes the Term Loan Lenders' entitlement to rely on TSA's contractual covenant to have no more than an immaterial portion of inventory on consignment.

## CONCLUSION

For the reasons set forth herein, as well as in the Motion, the Term Loan Agent respectfully requests that the Court (i) grant the Motion; and (ii) grant such other and further relief as the Court deems just and proper.

Dated: June 29, 2018
      Wilmington, Delaware

      **MORRIS, NICHOLS, ARSHT & TUNNELL LLP**
      */s/ Daniel B. Butz*
      Robert J. Dehney (No. 3578)
      Gregory W. Werkheiser (No. 3553)
      Daniel B. Butz (No. 4227)
      1201 N. Market St., 16th Floor
      P.O. Box 1347
      Wilmington, DE  19899-1347
      Tel: 302-658-9200
      Fax: 302-658-3989
      Email: rdehney@mnat.com
             gwerkheiser@mnat.com
             dbutz@mnat.com

- and -

**BROWN RUDNICK LLP**
Robert J. Stark (admitted *pro hac vice*)
William R. Baldiga (admitted *pro hac vice*)
May Orenstein (*pro hac vice* pending)
Bennett S. Silverberg (admitted *pro hac vice*)
Seven Times Square
New York, NY 10036
Tel: (212) 209-4800
Fax: (212) 209-4801

*Counsel to Wilmington Savings*
*Fund Society, FSB, as Term Loan Agent*