# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: <br><br> TSAWD HOLDINGS, INC., *et al.*,[1] <br><br> Debtors. | Chapter 11 <br><br> Case No. 16-10527 (MFW) <br> Jointly Administered |
| TSA STORES, INC., TSA PONCE, INC., and TSA CARIBE, INC., <br><br> Plaintiffs, <br><br> and WILMINGTON SAVINGS FUND SOCIETY, FSB, AS SUCCESSOR ADMINISTRATIVE AND COLLATERAL AGENT, <br><br> Plaintiff-Intervenor/ Counterclaim Defendant, <br><br> v. <br><br> PERFORMANCE APPAREL CORP. a/k/a HOT CHILLYS, INC., <br><br> Defendant/Counterclaim Plaintiff. | Adv. Pro. No. 16-50317-MFW <br><br><br> **Re:  D.I. 96, 97, 103** |

## PERFORMANCE APPAREL CORP.'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Dated:  June 29, 2018

**POTTER ANDERSON & CORROON LLP**
Jeremy W. Ryan (DE Bar No. 4057)
John A. Sensing (DE Bar No. 5232)
R. Stephen McNeill (DE Bar No. 5210)
1313 North Market Street, Sixth Floor
Wilmington, DE  19899-0951
Telephone:  (302) 984-6000
Facsimile:  (302) 658-1192

*Counsel to Performance Apparel Corp.*

---

[1]  The Debtors and the last four digits of their respective taxpayer identification numbers are as follows:  TSAWD Holdings, Inc. (9008); Slap Shot Holdings, Corp. (8209); TSAWD, Inc. (2802); TSA Stores, Inc. (1120); TSA Gift Card, Inc. (1918); TSA Ponce, Inc. (4817); and TSA Caribe, Inc. (5664).  The headquarters for the above-captioned Debtors is located at 1050 West Hampden Avenue, Englewood, Colorado 80110.

The Debtors were formerly known as: Sports Authority Holdings, Inc. (9008); Slap Shot Holdings, Corp. (8209); The Sports Authority, Inc. (2802); TSA Stores, Inc. (1120); TSA Gift Card, Inc. (1918); TSA Ponce, Inc. (4817); and TSA Caribe, Inc. (5664).

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ........................................................................................1

ARGUMENT .....................................................................................................................2

    I.      THE TERM LOAN LENDERS' KNOWLEDGE OF THE CONSIGNMENT RELATIONSHIP CANNOT REASONABLY BE CHALLENGED ..................................................................................2

    II.     THE TERM LOAN LENDERS' KNOWLEDGE OF THE CONSIGNMENT RELATIONSHIP CONSTITUTES ACTUAL KNOWLEDGE ..........................................................................................4

    III.    IF THE TERM LOAN LENDERS DID NOT OBTAIN ACTUAL KNOWLEDGE OF THE CONSIGNMENT RELATIONSHIP DIRECTLY, BOA'S ACTUAL KNOWLEDGE WOULD NONETHELESS BE IMPUTED TO THE THEM ...................................6

CONCLUSION ...................................................................................................................9

# **TABLE OF AUTHORITIES**

**CASES**                                                                                                            **PAGE(S)**

*Am. Nat'l Bank v. Joy*,
    169 B.R. 931 (Bankr. D. Neb. 1994) ...................................................................4

*Ambrico v. Lynbrook Union Free Sch. Dist.*,
    71 A.D.3d 762 (N.Y. App. Div. 2010) ................................................................2

*Berk v. State Bank of India*,
    1998 WL 567853 (S.D.N.Y. Aug. 28, 1998) .......................................................4

*Eurpac Serv. Inc. v. Repub. Acceptance Corp.*,
    37 P.3d 447 (Colo. App. 2000) ............................................................................4

*Fariba v. Dealer Servs. Corp.*,
    100 Cal. Rptr. 3d 219 (Cal. Ct. App. 2009) .....................................................4,5

*Gen. Elec. Credit Corp. v. Nardulli & Sons, Inc.*,
    836 F.2d 184 (3d Cir. 1988)............................................................................. 3-4

*Greenwood v. Koven*,
    880 F. Supp. 186 (S.D.N.Y. 1995) ................................................................. 6-7

*Harbinger Capital Partners Master Fund I, Ltd. v. Wachovia Capital Markets, LLC*,
    27 Misc.3d 1236(A) (N.Y. Sup. Ct. 2010).......................................................7,8

**STATUTES**

U.C.C. § 9-102(a)(20)(A)(iii) ...................................................................................5

Performance Apparel Corp. ("PAC") hereby respectfully submits its reply brief (the "Reply Brief")[2] in support of its motion for summary judgment [D.I. 96] (the "Motion").

## PRELIMINARY STATEMENT

The Term Loan Agent's argument that PAC has not provided *prima facie* evidence of knowledge is simply inaccurate. On the contrary, PAC provided the predecessor term loan agent, BOA, a letter confirming the existence of PAC's lien on the Consignment Goods. Furthermore, BOA acknowledged the existence of such lien by entering into the Term Loan Agreement, the schedules to which expressly identify PAC as a consignment vendor to the Debtors. The Term Loan Lenders similarly had knowledge of the Consignment Relationship by virtue of the Term Loan Agreement itself.

If, as the Term Loan Agent presupposes, the Term Loan Lenders did not have direct knowledge of the information in the agreement upon which they were lending—an unimaginable proposition—actual knowledge of the Consignment Relationship would have been imputed to Term Loan Lenders from BOA. Despite the Term Loan Agent's argument that BOA's duties to the Term Loan Lenders were limited by contract, the Term Loan Agent has produced no document between it and the Term Loan Lenders delineating those contractual duties. But in any event, because an agreement between two parties cannot bind non-signatory third parties, the relationship between BOA and the Term Loan Lenders must be analyzed under common law agency principles. Those principles mandate that BOA's knowledge of PAC's consignment interest is imputed to the Term Loan Lenders.

---

[2] PAC filed the Motion on May 18, 2018, and filed *Performance Apparel Corp.'s Opening Brief in Support of its Motion for Summary Judgment* [D.I. 97] (the "PAC Opening Brief") contemporaneously therewith. Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the PAC Opening Brief.

**ARGUMENT**

I. **THE TERM LOAN LENDERS' KNOWLEDGE OF THE CONSIGNMENT RELATIONSHIP CANNOT REASONABLY BE CHALLENGED.**

In its *Memorandum of Law of the Term Loan Agent in Opposition to Performance Apparel Corp.'s Motion for Summary Judgment* [D.I. 103] (the "WSFS Answering Brief"), the Term Loan Agent states that PAC has failed to present even a *prima facie* case of actual knowledge. Id. at ¶¶6, 19.  In making this claim, the Term Loan Agent relies on a technical distinction between notice and knowledge in an attempt to conjure an unreasonable scenario where there was notice of the Consignment Relationship but no knowledge of the same.  The Term Loan Agent fails to acknowledge however, that notice can provide knowledge. Ambrico v. Lynbrook Union Free Sch. Dist., 71 A.D.3d 762, 763 (N.Y. App. Div. 2010) (finding notice of a claim sufficient to provide "actual knowledge of the essential facts constituting that claim").  While the Term Loan Agent suggests that on some occasions the receipt of notice may not result in knowledge, it does not allege, much less demonstrate, that such is the case here.  In other words, the Term Loan Agent does not actually assert that BOA and the Term Loan Lenders did ***not*** have knowledge of PAC's Consignment Relationship.

Of course, this is because BOA, and the Term Loan Lenders themselves, had actual knowledge of the Consignment Relationship by way of the Term Loan Agreement.  The Term Loan Agreement specifically lists PAC as a consignment vendor with a senior security interest in the Consigned Goods. See Opening McNeill Declaration,[3] Ex. D, Term

---

[3] References to the McNeill Opening Declaration are references to the *Declaration of R. Stephen McNeill in Support of Performance Apparel Corp.'s Opening Brief in Support of Its Motion for Summary Judgment* [D.I. 98].

2

Loan Agreement Schedule 7.01(b). BOA negotiated and entered into the Term Loan Agreement, and therefore would have been familiar with and had actual knowledge of its terms. Accordingly, BOA had actual knowledge of the Consignment Relationship. See Answering McNeill Declaration,[4] Ex. A, WSFS 30(b)(6) Deposition Tr. at 98:18-24 ("Q. So is it fair to say then that as of the time the credit agreement was entered, Bank of America and all the other parties to the credit agreement were on notice that Performance Apparel Corporation was a secured party with regard to its consigned inventory? A. Yes.").

The Term Loan Lenders, from a cursory review of the Term Loan Agreement, would also have knowledge of the terms of the agreement, including knowledge relating to PAC's security interest in the Consigned Goods. The Term Loan Agent has not contended that any of the Term Loan Lenders did not review the Term Loan Agreement, nor that they did not have knowledge of its terms. Indeed, it is implausible that any lender would lend a substantial amount of money to a borrower without a full understanding of the terms on which it is lending.

The Term Loan Agent further attempts to disclaim actual knowledge by asserting that a "lapsed notice does not supply actual knowledge of the existence of a consignment relationship." WSFS Answering Brief, at ¶ 30. This assertion is wrong. Knowledge is knowledge, and a defect in notice will not extinguish actual knowledge. Indeed this notion goes against one of the intended purposes of the UCC, as explained by the Third Circuit, which is to "put *future* creditors and *subsequent* purchasers of the collateral on notice of the lien." Gen. Elec. Credit Corp. v. Nardulli & Sons, Inc., 836 F.2d 184, 190 (3d Cir.

---

[4] References to the McNeill Answering Declaration are references to the *Declaration of R. Stephen McNeill in Support of Performance Apparel Corp.'s Answering Brief in Opposition to the Term Loan Agent's Motion for Summary Judgment* [D.I. 108].

3

1988) (emphasis added) (preserving liens held by creditors who failed to renew the notices of their liens pursuant to the UCC as against parties who were not future creditors or subsequent purchasers). Accordingly, because BOA and the Term Loan Lenders were aware of the liens held by PAC relating to the Consigned Goods, as evidenced by the Term Loan Agreement, additional notice of the same lien would not be necessary because BOA and the Term Loan Lenders were not "future creditors."

## II. THE TERM LOAN LENDERS' KNOWLEDGE OF THE CONSIGNMENT RELATIONSHIP CONSTITUTES ACTUAL KNOWLEDGE.

Because the Term Loan Agent cannot dispute the Term Loan Lenders' knowledge of the Consignment Relationship, it next argues that the Term Loan Lenders' knowledge does not constitute "actual knowledge" under the exception to the UCC recognized by nearly every court that has addressed the issue. The Term Loan Agent has cited to only one case that outright rejected the applicability of the actual knowledge exception. WSFS Answering Br. at ¶ 27 (citing In re State Street Auto Sales, Inc., 81 B.R. 215, 218-20 (Bankr. D. Mass. 1988)).[5] The most recent authority on the subject, however found "the reasoning of the *overwhelming* majority of jurisdictions finding such an exception persuasive." Fariba v. Dealer Servs. Corp., 100 Cal. Rptr. 3d 219, 228 n.4 (Cal. Ct. App. 2009) (emphasis added) (declining to follow State Street, the "[o]ne case [that] rejected the 'actual notice' exception"); see also Eurpac Serv. Inc. v. Repub. Acceptance Corp., 37 P.3d 447, 450 (Colo. App. 2000) (collecting cases). Thus, State Street is properly viewed as an outlier.

---

[5] The other two cases cited by the Term Loan Agent that rejected the actual knowledge exception did not reject the exception itself; rather, they found the exception inapplicable based on the facts of the case. See Berk v. State Bank of India, 1998 WL 567853, at *5 (S.D.N.Y. Aug. 28, 1998) (finding that the case did not present an issue of actual knowledge); Am. Nat'l Bank v. Joy (In re Joy), 169 B.R. 931, 940 (Bankr. D. Neb. 1994) (finding that the secured creditor did not have actual knowledge).

Next, the Term Loan Agent argues that the actual knowledge exception does not apply on the facts presented. First, the Term Loan Agent argues that the actual knowledge exception requires evidence that the seller (*i.e.*, the consignee) was "substantially engaged in selling the goods of others." WSFS Answering Brief, at ¶ 31. Second, the Term Loan Agent argues that the consignment vendors must provide "direct evidence of actual knowledge or circumstantial evidence of a secured creditor's hand's [*sic*] on involvement with a debtor that includes in-depth access to the debtor's records of consignment transactions." Id., at ¶32. Although the cases cited by the Term Loan Agent established two distinct paths to demonstrate actual knowledge, the Term Loan Agent reads both lines of cases out of context.

As demonstrated by the numerous cases cited by the Term Loan Agent in paragraphs 31 and 32 of the WSFS Answering Brief, the actual knowledge defense does not depend on evidence that the consignee was substantially engaged in selling the goods of others. Indeed, this is just another iteration of the "general knowledge" defense that is already provided for by the UCC. See U.C.C. § 9-102(a)(20)(A)(iii). In other words, some cases have found that a creditor's actual knowledge that its debtor was substantially engaged in selling goods on consignment precludes that creditor from relying upon the protections provided for in the UCC. See Fariba, 100 Cal. Rptr. 3d at 230 (rejecting the secured creditor's argument that it has priority because it did not know of the specific consignment relationship). PAC must demonstrate that the Term Loan Lenders knew that PAC was selling goods on consignment to the Debtors; it is not required to demonstrate that the Term Loan Lenders actually knew that the Debtors were substantially engaged in consignment sales.

As discussed above, despite the Term Loan Agent's arguments to the contrary, BOA had specific knowledge of the Consignment Relationship through its receipt of the Perfection Letters and its negotiation of the Term Loan Agreement. Those documents specifically refer to PAC's Consignment Relationship with the Debtors. BOA and the Term Loan Lenders, likewise, were aware of the Consignment Relationship based on the schedules to the Term Loan Agreement that specifically identify that relationship. Thus, any argument that the Term Loan Lenders were not aware of the Consignment Relationship misstates the records.

### III. IF THE TERM LOAN LENDERS DID NOT OBTAIN ACTUAL KNOWLEDGE OF THE CONSIGNMENT RELATIONSHIP DIRECTLY, BOA'S ACTUAL KNOWLEDGE WOULD NONETHELESS BE IMPUTED TO THE THEM.

Notwithstanding the undisputed documentary evidence to the contrary, assuming *arguendo* that the Term Loan Lenders did not directly obtain actual knowledge of the Consignment Relationship through their review of the Term Loan Agreement, the Term Loan Lenders would nonetheless be imputed with actual knowledge from BOA pursuant to their agency relationship. In an effort to avoid this conclusion, the Term Loan Agent argues that BOA's actual knowledge cannot be imputed to the Term Loan Lenders. Its primary argument in this regard is that the Term Loan Agreement itself limits the Term Loan Agent's duties to the Term Loan Lenders, including specifically that the Term Loan Agent has no obligation to disclose any information relating to the Debtors that it obtains to the Term Loan Lenders. The Term Loan Agent, however, overlooks one critical detail with respect to this argument; the Term Loan Lenders are not signatories to the Term Loan Agreement. McNeill Opening Declaration, Ex. D, at TLA00000216-17. An agent cannot curtail its duties to its principals absent an agreement signed by the principals. See Greenwood v. Koven, 880 F. Supp. 186, 195 (S.D.N.Y. 1995) (explaining that "[i]n the

6

absence of an agreement" between the principal and the agent, an agent may not act in a manner that "might conceivably be an act of disloyalty"). Even if the Term Loan Lenders subsequently agreed to be bound by the terms set forth in the Term Loan Agreement, the Term Loan Agent has produced no evidence of such an agreement that was signed by any Term Loan Lender. Without that documentation,[6] the Term Loan Agent cannot prove that an agreement signed only by its predecessor and the Debtors effectively limits its obligations to its principals, the Term Loan Lenders.[7]

The unreported case relied upon by the Term Loan Agent for its position, <u>Harbinger Capital Partners Master Fund I, Ltd. v. Wachovia Capital Markets, LLC</u>, is taken wildly out of context. 27 Misc.3d 1236(A) (N.Y. Sup. Ct. 2010). First, <u>Harbinger</u> was a fraud case asserted by lenders against their agent and other parties. <u>Id.</u> at *1. Proving fraud, or more specifically detrimental reliance, requires a significantly different analysis than whether an agent owes a duty to its principal. While the <u>Harbinger</u> court found that the disclaimer at issue "destroys the allegations in plaintiffs' complaint that the agreement was executed in reliance upon these contrary oral representations," it in no way discussed whether the defendant was an agent for the plaintiffs. <u>Id.</u> at *5. Second, contrary to the Term Loan Agent's assertions, the court at no time referred to the disclaimer provision as "enforceable." Indeed, the only reference to enforceability in the entire opinion was when

---

[6] Any attempt by the Term Loan Agent to provide such documentation at the end of briefing on dispositive motions should not be permitted, as any such documents should have been produced in response to PAC's discovery requests. <u>See</u> *Declaration of R. Stephen McNeill in Support of Performance Apparel Corp.'s Reply Brief in Support of Its Motion for Summary Judgment*, Ex. A, PAC Document Requests, at ¶¶ 1, 29, which was filed contemporaneously herewith.

[7] Even if the Term Loan Agent is correct that the Term Loan Agreement is binding upon the Term Loan Lenders who did not sign it—and it is not—those Term Loan Lenders would be bound by all portions of the Term Loan Agreement, including the schedules expressly identifying the Consignment Relationship.

7

the court noted that "'a disclaimer is generally enforceable *only if* it tracks the substance of the alleged misrepresentation . . . .'" Id. (quoting Caiola v. Citibank, N.A., 295 F.3d 312, 330 (2d Cir. 2002)) (emphasis added). Because there is no alleged misrepresentation at issue here, Harbinger is not applicable.

Without evidence to support its alleged contractually limited obligations to its principals, the Term Loan Agent must rely on common law agency principles in arguing that the knowledge of BOA was not imputed to the Term Loan Lenders. The Term Loan Agent acknowledges knowledge is imputed when such knowledge is material to the duties of the agent. WSFS Answering Brief, at ¶ 47. The Term Loan Agent fails, however, to provide any support for its proposition that information regarding the Consignment Relationship—information that was important enough to be included in the Term Loan Agreement that BOA was negotiating on behalf of the Term Loan Lenders—was not material to BOA duties other than its bald assertion that "the scope of the Term Loan Agent's duties did not extend to reporting information on consignment relationships." Id. at ¶ 48. The Term Loan Agent has yet to provide any information regarding who the Term Loan Lenders are, or what contractual agreement they may have had with BOA as their agent, however whatever those terms may be, it is fair to conclude that the terms of an agreement that an agent negotiates on behalf of its principals, and which bind its principals, are material to those principals. Accordingly, BOA's duties encompass knowledge of the Consignment Relationship, and because BOA had a duty, and because the information was material, BOA's actual knowledge must be imputed to the Term Loan Lenders.

## **CONCLUSION**

For the foregoing reasons, PAC respectfully requests that the court grant the Motion and grant PAC any further relief to which it is otherwise entitled.

Respectfully submitted,

Dated: June 29, 2018　　　　　　　　　　**POTTER ANDERSON & CORROON LLP**
　　　　　Wilmington, Delaware

*/s/ John A. Sensing*
Jeremy W. Ryan (DE Bar No. 4057)
John A. Sensing (DE Bar No. 5232)
R. Stephen McNeill (DE Bar No. 5210)
1313 North Market Street, Sixth Floor
P.O. Box 951
Wilmington, DE  19899-0951
Telephone:  (302) 984-6000
Facsimile:  (302) 658-1192
Email:  jryan@potteranderson.com
　　　　jsensing@potteranderson.com
　　　　rmcneill@potteranderson.com

*Counsel to Performance Apparel Corp.*